DALLAS ATHLETIC ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1310.    Promulgated October 29, 1927.

> Petitioner purchased contracts for the services of certain professional baseball players during the year 1922, each contract being renewable from year to year at the option of the petitioner or its assignee. *Held,* that the amounts paid for such contracts represent capital expenditures, and that, since the rights acquired by the petitioner thereunder are not shown by the evidence to have been exhausted or lessened by the passage of time, it is not entitled to any deduction for exhaustion.

*Hart Willis, Esq.,* for the petitioner.
*John D. Foley, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for the year 1922 in the amount of $4,235.72. In the same letter respondent also asserted a deficiency in income tax for the year 1921, but no errors are alleged by petitioner as to that year. There is no controversy with respect to the facts. The only issue presented is whether certain amounts paid by petitioner during the taxable year as a bonus for the contracts of baseball players purchased from other clubs are deductible as ordinary and necessary business expenses or constitute capital expenditures, and if the latter, whether petitioner is entitled to a deduction for the exhaustion thereof.

### FINDINGS OF FACT.

Petitioner is a corporation, organized under the laws of Texas, with its principal office at Dallas. During the year 1922, it was engaged in operating a professional baseball club, known as the Dallas Baseball Club in the Texas League, which was a member of the National Association of Professional Baseball Leagues. During the taxable year involved, the petitioner purchased contracts of players from other clubs in the National Association, as follows:

| Player | Club from which purchased | Bonus paid | Date paid |
|---|---|---|---|
| Mathew Donohue | Baltimore, Md | $1,500 | Mar. 14, 1922 |
| B. C. Wheat | Lansing, Mich | 500 1,000 | Mar. 16, 1922 May 12, 1922 |
| Pete Shields | San Antonio, Tex | 1,500 | May 15, 1922 |
| Jack Reid | Mineral Wells, Tex | 500 | June 14, 1922 |
| Mike Massie | Oklahoma City, Okla | 750 | June 20, 1922 |
| Tom Lovelace | Greenville, Tex | 1,000 | July 15, 1922 |
| Don Rador | | | |
| Edwin Love | Beaumont, Tex | 6,000 | July 26, 1922 |
| Nick Do Maggio | | | |
| Ned Sealy | Greenville, Tex | 490 | Sept. 11, 1922 |
| William Hamilton | Sioux City, Iowa | 1,000 | Sept. 12, 1922 |
| Jack Adams | Seattle, Wash | 2,500 | Dec. 18, 1922 |
| | | 18,240 | |

All members of the National Association of Professional Baseball Leagues used a uniform player's contract, approved by the National Association. In the case of each player referred to above, whose contract was purchased by petitioner in 1922, the uniform contract was used, and contained the following provisions:

CONTRACT

Approved by the

NATIONAL ASSOCIATION OF PROFESSIONAL BASE BALL LEAGUES UNIFORM PLAYER'S CONTRACT

*Parties*

The _____ herein call the Club and _____ of _____ herein called the Player.

*Recital*

The Club is a member of the National Association of Professional Baseball Leagues. As such, and jointly with the other members of the National Association of Professional Baseball Leagues, it is a party to agreements with the American League of Professional Baseball Clubs and its constituent clubs and with the National League of Professional Baseball Clubs and its constituent clubs. The purpose of these agreements is to insure to the public wholesome and high-class professional baseball by defining the relations between club and player, between club and club, between league and league and by vesting in a designated Commissioner and National Board broad powers of decision in cases of disputes.

*Agreement*

In view of the facts above recited the parties agree as follows:

*Employment*

1. The Club will pay the Player a salary for his skilled services during the playing season of 1922 at the rate of $_____ per month.

*Salary*

2. The salary above provided for shall be paid by the Club as follows:

In semi-monthly installments after the commencement of the period covered by this contract, unless this contract shall be terminated by the club while the Player is "Abroad" with the Club for the purpose of playing games, in which event the amount then due shall be paid on the first week-day after the return "home" of the Club.

*Loyalty*

3. The Player during said season will faithfully serve the Club or any other Club to which, in conformity with the agreements above recited, this contract

may be assigned, and pledges himself to the American public to conform to high standards of fair play and good sportsmanship.

*Service*

4. The Player will not play during 1922 otherwise than for the Club or for such other Clubs as may become assignees of this contract in conformity with said agreements.

*Assignment*

5. In case of assignment of this contract to another Club each successive assignee shall become liable to the Player for his salary during his term of service with such assignee, and the Club shall not be liable therefor. If the transaction of transfer of services is between two clubs of the same classification in the National Association of Professional Baseball Leagues, the salary rate shall be as first specified in contract. If the assignee is any other club, the salary rate shall be the same as that usually paid by said club to other players of like ability.

*Discipline*

6. (a) The Player accepts as part of this contract the regulations printed on the third page hereof and such reasonable modifications of them as the Club may announce from time to time.

(b) This contract may be terminated at any time by the Club or by any assignee.

(c) The Player submits himself to the discipline of the National Board and the discipline of the Commissioner and agrees to accept all decisions rendered pursuant to the Major-Minor League Agreement.

*Renewal*

7. (a) Any time prior to March 1st, 1923 by written notice to the Player, the Club or any assignee thereof may renew this contract for the term of that year except that the salary rate shall be such as the parties may then agree upon, or, in default of agreement, such as the club may fix.

(b) In default of agreement, the Player will accept the salary rate thus fixed or else will not play during said year otherwise than for the Club or for an assignee hereof, subject to the right of appeal as provided in paragraph 8.

(c) The reservation to the Club of the valuable right thus to fix the salary rate for the succeeding year and the promise of the Player not to play during said year otherwise than with the Club or an assignee hereof, have been taken into consideration in determining the salary specified herein and the undertaking by the Club to pay said salary is the consideration for both the reservation and the promise.

*Disputes*

8. In case of dispute between the Player and the Club or any assignee hereof the same shall be referred to the National Board or the Commissioner as the case may be, as an umpire, and the decision shall be accepted by all parties as final.

Signed this _____ day of _____ A. D. 192__.

[SEAL.]

                 ------------------------------------

By_____

                            President for the Club

               -           Player sign here

                        Player's Home Address

Witnesses:

_____

_____

On March 6, 1923, petitioner filed its income-tax return for the calendar year 1922, in which it took a deduction from gross income of the full amount paid for the contracts of all players released during that year, and in the cases of three players whose contracts were sold for less than their cost, it took a deduction of the difference between the cost and the sales prices. The petitioner now contends that it is entitled to deduct as a business expense the full amount paid for each contract purchased during the taxable year, whether or not the contract was sold or was terminated by release of the player during the year. The deduction taken by petitioner in its return included the following:

*Ball players released, charged off, 1922*

|  | Cost | Released, charged off |
|---|---|---|
| Jack N. Reid | $500 | $500 |
| Don Rader | 2,000 | 2,000 |
| Nick De Maggio | 2,000 | 2,000 |

The respondent, upon audit of petitioner's income-tax return for 1922, deducted from gross income the cost of the contracts of such players as were released during the year 1922, and computed gain or loss upon the sales of the contracts of such players as were sold during that year, but refused to permit the petitioner to deduct the cost, or any part thereof, of the contracts of such players as were neither released nor sold. It is the cost of the contracts last mentioned which petitioner now seeks to deduct as expense.

### OPINION.

TRAMMELL: The petitioner contends that the entire cost of the contracts involved herein is an ordinary and necessary business expense for the year 1922, which it is entitled to deduct in computing its net income for that year. The respondent, however, urges that each of those contracts constitutes a capital asset; that petitioner acquired under each contract a property right in the nature of an option which continued and remained valuable after the year 1922, in the case of each contract not terminated in that year, and that no deduction of any part of the cost of the contract is allowable until the player who is a party thereto is released, or until the contract is sold, in which latter event gain will be realized or loss sustained, depending upon whether the sale price is greater or less than the cost of the contract.

It is well settled that if these contracts represent capital assets and were exhausted by the passage of time or otherwise, the petitioner is entitled to spread the amount paid for each contract over the

determinable period of its life, and to deduct an aliquot part thereof in each year. *Appeal of Grosvenor Atterbury,* 1 B. T. A. 169; *Appeal of Atlantic Carton Corporation,* 2 B. T. A. 380; *Philip Henrici Co.* v. *Reinicke,* 3 Fed. (2d) 34.

From a consideration of the facts, we are convinced that these contracts represent capital expenditures and may not be treated as an ordinary and necessary business expense, chargeable against current income. Paragraph 7 of the uniform contract provides as follows:

*Renewal*

7. (*a*) Any time prior to March 1st, 1923 by written notice to the Player, the Club or any assignee thereof may renew this contract for the term of that year except that the salary rate shall be such as the parties may then agree upon, or, in default of agreement, such as the club may fix.

(*b*) In default of agreement, the Player will accept the salary rate thus fixed or else will not play during said year otherwise than for the Club or for an assignee hereof, subject to the right of appeal as provided in paragraph 8.

(*c*) The reservation to the Club of the valuable right thus to fix the salary rate for the succeeding year and the promise of the Player not to play during said year otherwise than with the Club or an assignee hereof, have been taken into consideration in determining the salary specified herein and the undertaking by the Club to pay said salary is the consideration for both the reservation and the promise.

It seems clear to us that the foregoing provisions vested in the Club much more than the mere right to negotiate with the player for his services during the succeeding year. By the provisions above quoted, petitioner acquired, for a valuable consideration, the right to renew the contract for the succeeding year upon the same terms and conditions, except that the salary rate should be such as the parties might agree upon, or in default of agreement, such as the petitioner might fix, subject only to the player's right of appeal as provided in paragraph 8. And the player was obligated by the agreement to accept the salary rate thus fixed and play for the petitioner or its assignee, or to refrain from playing during said year. Thus, the contract might be renewed by petitioner, or its assignee, from year to year throughout the professional life of the player. That this right was regarded by the parties as very valuable, is not only evidenced by the wording of paragraph 7 of the contract, but is established by other facts and circumstances in the record before us. The contracts in question covered only the playing season of 1922, yet we find that petitioner purchased the contract of Player Sealy on September 11, 1922, for $490, and the contract of Player Hamilton on September 12, 1922, for $1,000, when the playing season for that year was then rapidly approaching its end. Also, on December 18, 1922, after the close of the playing season for that year, petitioner purchased the contract of Player Jack Adams for $2,500. These facts justify the conclusion that petitioner purchased said contracts solely

because it thereby acquired the right to renew them for the succeeding year at any time prior to March 1, 1923.

Having concluded that the amounts paid for the contracts represent capital expenditures, can it be said that these contracts were exhausted by the lapse of time? Each contract covered only the playing season the year in which or for which it was made, but was according to its terms renewable by the club or its assignee for the succeeding year. By virtue of the renewal provisions, the rights acquired under each contract extended beyond the year when the contracts were acquired. The ultimate result would have been the same if a single contract had been made with each player for an indefinite or undetermined period, subject to an annual salary adjustment under the conditions stated. While under certain facts and conditions contracts for an indefinite period may in fact become exhausted over a reasonably ascertained or estimated period of time, no evidence has been introduced in this case from which it can be ascertained when the contracts will become exhausted for the purpose of determining the allowance with respect thereto. The determination of the respondent must, therefore, be approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*